```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**MICHAEL J. PARSONS, M.D.,**

        **Plaintiff,**

**v.**                         **//   CIVIL ACTION NO. 1:16CV20**
                                                  **(Judge Keeley)**

**STANDARD INSURANCE COMPANY and**
**MINNESOTA LIFE INSURANCE COMPANY.**

        **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'**
**MOTION TO DISMISS COUNTS II AND III [DKT. NO. 14]**

Pending before the Court is the motion to dismiss (dkt. no. 14), filed by the defendants, Standard Insurance Company ("SIC") and Minnesota Life Insurance Company ("MLIC") (collectively "defendants" or "insurers"). The motion seeks to dismiss Counts II and III of the complaint, claiming they are barred by West Virginia's one-year statute of limitations. Alternatively, the defendants assert that Counts II and III are inadequately pled, and should be dismissed pursuant to Fed. R. Civ. P. 8. For the reasons that follow, the Court **GRANTS** the motion.

**I. BACKGROUND**

From October, 2011, through May, 2013, the plaintiff, Michael J. Parsons ("Parsons"), was an emergency room physician at Louis A. Johnson VA Hospital in Clarksburg, West Virginia. On April 14, 2001, Parsons procured a disability income insurance policy from MLIC, which was to provide him with an income of $6,000 per month in the event he became disabled or was unable to continue in his

regular occupation. On April 14, 2013, Parsons procured a second disability income insurance policy from SIC, which was to provide him with income of $450 per month in the event he became disabled and could not perform the substantial and material duties of his regular occupation.

On or about May 23, 2013, Parsons was diagnosed with a cardiac condition known as prinzmetal's angina.[1] The complaint alleges that Parsons properly filed claims with SIC, which administered both policies.[2] Under a reservation of rights, SIC paid Parsons benefits from both policies from August 21, 2013, until February 13, 2014, a period of just under six months. On or about February 13, 2014, the defendants denied coverage and ceased any further benefit payments.

---

[1] "Prinzmetal's angina is a form of chest pain, pressure, or tightness (angina) caused by spasms in the arteries that supply blood to the heart. It is a form of unstable angina, meaning that it occurs at rest, often without a predictable pattern. This is in contrast to stable angina, in which chest pain occurs in a predictable pattern during exertion or exercise." *Prinzmetal Angina*, C A R D I A C H E A L T H . O R G , http://www.cardiachealth.org/prinzmetal%E2%80%99s-angina#sthash.dcl0Bk3v.dpuf

[2] During the scheduling conference conducted on April 21, 2016, counsel for the defendants informed the Court that SIC had purchased some portion of MLIC's business, including Parson's policy, which is why SIC handled both claims.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS COUNTS II AND III [DKT. NO. 14]**

Parsons appealed the denial of benefits, arguing that he was still under the care and treatment of his physician and unable to engage in his regular occupation. The parties engaged in several rounds of correspondence and requests for additional documentation. According to Parsons, he fully complied with all of the insurers' requests. Nonetheless, by letter dated January 15, 2015, the defendants affirmed their denial of benefits and refused to pay Parsons further benefits under the policies.

On January 12, 2016, Parsons filed suit in the Circuit Court of Harrison County, asserting claims for breach of contract, statutory bad faith under the West Virginia Unfair Trade Practices Act[3] ("UTPA"), and common law bad faith. In his complaint, Parsons sought 1) enforcement of the insurance contracts, 2) damages for aggravation, mental anguish, humiliation, embarrassment, emotional distress, and inconvenience, 3) damages for amounts paid by him since his date of loss, including interest, 4) punitive damages for intentional or reckless conduct, 5) attorney's fees and costs, 6) pre- and post-judgment interest, and 7) all applicable Hayseeds-type damages.

---

[3]The Complaint incorrectly labels the statute as the Unfair Claims Settlement Act.

**PARSONS v. STANDARD INSURANCE, et al**                        **1:16CV20**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS COUNTS II AND III [DKT. NO. 14]**

The defendants timely removed the case to this Court on February 12, 2016, based on diversity jurisdiction.

### II. THE DEFENDANTS' MOTION TO DISMISS COUNTS II AND III

On March 4, 2016, the defendants moved to dismiss Counts II and III of Parsons's complaint (dkt. no. 14), citing two bases. They first claim that the alleged UTPA violation contained in Count II, and the common law bad faith claim contained in Count III (collectively "the bad faith claims"), are barred by West Virginia's one-year statute of limitations. Alternatively, they claim that Parsons inadequately pled Counts II and III, and the Court should dismiss those claims pursuant to Fed. R. Civ. P. 8.

### A. The Statute of Limitations Bars Counts II & III

In Dunn v. Rockwell, 689 S.E.2d 255, 265 (W.Va. 2009), the West Virginia Supreme Court of Appeals laid out a five-step analysis for courts to utilize when determining whether a claim is barred by the relevant statute of limitations:

> **First**, the court should identify the applicable statute of limitation for each cause of action. **Second**, the court (or, if material questions of fact exist, the jury) should identify when the requisite elements of the cause of action occurred. **Third**, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, . . . **Fourth**, if the plaintiff is not entitled to the benefit of the

> discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And **fifth**, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine.

(Emphasis added). "In the great majority of cases, the issue of whether a claim is barred by the statute of limitations is a question of fact for the jury." Gaither v. City Hosp., Inc., 487 S.E.2d 901, 909-10 (W.Va. 1997). The Court, however, may make a determination "where the relevant facts are undisputed and only one conclusion may be drawn from those facts." Legg v. Rashid, 663 S.E.2d 623, 630 (W.Va. 2008)(citation omitted).

**1.   The Applicable Statute of Limitations Period is One Year**

Under W.Va. Code § 55-2-12(c), both UTPA and common law bad faith claims are subject to a one-year statute of limitations. See Noland v. Virginia Ins. Reciprocal, 686 S.E.2d 23, 33, 35 (W.Va. 2009) (holding that the one year statute of limitations contained in § 55-2-12(c) applies to both statutory and common law bad faith claims).

**2.	The Causes of Action Accrued on February 13, 2014**

According to Parsons' complaint, his bad faith claims are a result of the defendants' denial of coverage and cessation of any further benefit payments, both of which occurred on February 13, 2014. See Dkt. No. 1-2 at 4. He further acknowledges that he was "put on notice of the Defendants' [denial] . . . when he received the February 13, 2014 letter." (Dkt. No. 17 at 8-9). Accordingly, the Court concludes that the cause of action accrued on February 13, 2014.

**3.	The Statute of Limitations Began to Run on February 13, 2014**

Under the "discovery rule," the statute of limitations begins to run "when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action." Dunn v. Rockwell, 689 S.E.2d at 265 (citing Syl. Pt. 4, Gaither v. City Hosp., Inc., 487 S.E.2d 901 (W.Va. 1997)). It is clear from the face of Parsons' complaint that he was aware of the denial of coverage and cessation of benefit payments when he received the defendants' denial letter on February 13, 2014. The Court, therefore, concludes that the statute of limitations began to run on that date.

**4.   The Defendants did not Fraudulently Conceal any Facts**

The Court need not spend any time on this step of the analysis, as there has been no claim or inference that the defendants concealed any facts, fraudulently or otherwise.

**5.   The Defendants are not Equitably Estopped from Asserting a Statute of Limitations Defense**

Parsons relies heavily on this fifth step of the Dunn analysis to advance his argument. The crux of his response to the defendants' statute of limitations argument is that he "reasonably relied upon the Defendants' representations, delaying filing suit because he was trusting the representations made by the Defendants and the possibility of a more favorable outcome in the administrative review process." (Dkt. No. 17 at 9). Accordingly, the defendants should be equitably estopped from asserting a statute of limitations defense. In other words, so long as there was a chance that the defendants, at some point, would change their minds and provide coverage and pay benefits to Parsons, the statute of limitations should be tolled. Under that logic, the statute of limitation should not have begun to run until January 15, 2015, the date on which Parsons received the letter denying his appeal.

The law favors statutes of limitation and construes them liberally. See Johnson v. Nedeff, 452 S.E.2d 63, 66 (W.Va. 1994)

(quotations omitted); <u>Humble Oil & Ref. Co. v. Lane</u>, 165 S.E.2d 379, 383 (W.Va. 1969). In order to avoid a statute of limitations, a plaintiff must "bring himself strictly within some exception." <u>Nedeff</u>, 452 S.E.2d at 66.

One such exception is the doctrine of equitable estoppel, which applies when "a party is induced to act or to refrain from acting to her detriment because of her reasonable reliance on another party's misrepresentation or concealment of a material fact." <u>Bradley v. Williams</u>, 465 S.E.2d 180, 184-85 (W.Va. 1995) (quotation omitted). In <u>Humble Oil & Ref. Co. v. Lane</u>, the West Virginia Supreme Court of Appeals held that

> [i]n order to create an estoppel to plead the statute of limitations the party seeking to maintain the action must show that he was induced to refrain from bringing his action within the statutory period by some affirmative act or conduct of the defendant or his agent and that he relied upon such act or conduct to his detriment.

Syl. Pt. 1, 165 S.E.2d 379 (1969); <u>see also</u> <u>Estate of Dearing ex rel. Dearing v. Dearing</u>, 646 F.Supp. 903, 907 (S.D.W.Va. 1986) (stating that "[i]n the absence of an affirmative act by the Defendants which induces the Plaintiffs to refrain from timely bringing suit, the Plaintiffs cannot successfully make out a case for estoppel"). Courts, thus, should be cautious in their application of equitable estoppel. <u>See</u> Syl. pt. 5, <u>McFillan v.</u>

Berkeley County Planning Comm'n, 438 S.E.2d 801 (W.Va. 1993) (citations omitted).

Inducement "is an essential element of estoppel." Humble Oil, 165 S.E.2d at 384. An insurer must make a representation that induces the plaintiff to pursue his chosen course of action, and the plaintiff then must rely on that representation to his detriment. Humble Oil, 165 S.E.2d at 384. The affirmative act complained of must be of such a kind that a "reasonable man, relying thereon, would believe that his debtor would not invoke the statute of limitations as a defense to his claim." Humble Oil, 165 S.E.2d at 384. Requests for a delay or forbearance, or vague statements that do not rise to the level of a "promise or agreement not to plead the statute of limitations," do not support estoppel. Id.

Parsons relies on Morrison v. Standard Insurance Company to support his contention that the language used by his insurers induced him to refrain from filing suit until after the statutory period. 2010 WL 3703036 (S.D.W.Va. Sept. 16, 2010). Although the facts in Morrison are similar to the instant case, even involving the same defendant, it affords little support to Parsons. First, Morrison is an unpublished opinion in which the district court

addressed a question of fraudulent joinder, not a motion to dismiss. Id. at *4. Furthermore, the court in Morrison simply found that "the statute of limitations issue [was] not sufficiently clear to be resolved at [that] stage of the litigation." Id. While acknowledging the existence of the equitable estoppel doctrine, the court did not specifically address whether, or why, it should apply in that case.

A far more persuasive case is Humble Oil & Ref. Co. v. Lane, 165 S.E.2d at 384., in which the Supreme Court of Appeals of West Virginia analyzed a similar factual scenario. There, the plaintiff alleged that the insurance company, through a series of eight letters, represented that it would pay his claims upon settling the underlying personal injury claims resulting from a truck accident. Id. at 381, 383. The court reviewed the letters and found that they contained nothing that had induced the plaintiff to forego filing suit until the statutory period had run.

> In our opinion, nothing that the insurance company said or did constituted a representation which could reasonably have been relied upon by the plaintiff as a basis for believing that it would not have to bring suit in this matter. Motorists Mutual did not admit liability; it did not promise to pay any amount or to settle the claim; it did not say it would not plead the statute of limitations; it did not say that it would pay or settle when the personal injury claim was disposed of; nor did it request the plaintiff to refrain from suing. In this

> regard, the most that can be said of the correspondence is that Motorists Mutual said they would consider the plaintiff's claim upon the disposition of Mr. Taylor's personal injury claim. They further asked for delays in considering the plaintiff's case and thanked it for its cooperation.

Id. at 384. The court specifically noted that the insurer had made no affirmative promise. Furthermore, although the insurer's request for further delay one month prior to the end of the statutory period might appear unfair, it was "insufficient to form the basis for estoppel." Id. at 384-85. Notably, the insurer in Humble Oil never denied coverage outright; rather, it simply kept delaying a decision on the matter.

Here, Parsons alleges that several statements by his insurers induced him to forego filing suit. For example, the insurers' denial letter informed him of his right to seek review of the denial, which, according to Parsons, meant that the denial was subject to reversal. A subsequent letter seeking documentation informed Parsons that

> [b]ecause we believe the above proof of loss documentation is required before we are able to make a _final determination_ on your claim, we ask that you take appropriate steps necessary to provide the requested information to us as promptly as possible, or by no later than 45 days from the date of this letter.

(Dkt. No. 17 at 4). Yet another letter proclaimed:

11

> If we do not hear from you or receive any of the information outlined above from you and or [sic] the Louis A. Johnson VA Medical Center within 45 days from the date of this letter, we will immediately complete our appeal review and <u>render a decision which may not be in your favor</u>, . . .

Id.

According to Parsons, these and other similar statements "would lead a reasonably prudent person to believe that [the insurer] contemplated the potential of rendering a decision in [his] favor." Id. Such contemplation of a potential outcome, however, hardly suffices to warrant estoppel.

As in <u>Humble Oil</u>, the defendants' communications with Parsons do not warrant estoppel. Those communications did not admit liability, nor did they promise to pay any amount or to settle the claim. They never stated, or even inferred, that the defendants would not plead the statute of limitations, nor did they request that Parsons refrain from suing. In fact, their only affirmative act was to deny coverage and cease paying benefits – a decision the insurer in <u>Humble Oil</u> never reached prior to the end of the statutory period. These facts thus are even less supportive of equitable estoppel than were those in <u>Humble Oil</u>.

An insured's appeal is simply a hope that the insurer will reconsider the decision it has already made. The mere potential

12

that an insurer might reverse its position cannot qualify as an affirmative act sufficient to induce a plaintiff to forego filing suit, and it certainly is not a promise that it will not plead the statute of limitations. Parsons therefore has failed to establish that equitable estoppel should apply here.

Finally, although not necessary to the determination of the instant motion, it should be noted that, following denial of his appeal, Parsons had nearly a month remaining in which to file suit. Not only did he not file within that month, he waited an additional eleven months before acting. This undercuts any assertion that he delayed filing suit solely because of the possibility that the insurers might change their decision.

For the reasons discussed, the Court **GRANTS** the defendants' motion and **DISMISSES** Counts II and III **with PREJUDICE.** This leaves Count I, Breach of Contract, as the lone surviving claim.

### B. Counts II & III are Adequately Pled

The defendants also claim that Parsons inadequately pled Counts II and III, and those claims should therefore be dismissed pursuant to Fed. R. Civ. P. 8. The Court need not expend significant effort on this claim. A review of the complaint and the attachments to his response establishes that Parsons has pled the

following: (1) that he secured policies through the insurers; (2) that he paid premiums on those policies for a number of years; (3) that he was diagnosed by his physician as disabled under the policies; (4) that he properly filed all relevant claims and complied with all necessary conditions; (5) that he received benefit payments for almost six months; and (6) that Standard wrongfully denied him coverage and benefit payments. Parsons alleges that he is entitled to the benefits for which he has paid, and the insurers' refusal amounts to a violation of the UTPA and common law bad faith.

Although the allegations are not highly detailed, they are more than "an unadorned, the-defendant-unlawfully-harmed me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Parsons's complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" See Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 56 U.S. at 678 (in turn quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007))). Accordingly, the Court concludes that (even had it not already dismissed the claims as barred under the statute of limitations) Parsons has adequately

14

**PARSONS v. STANDARD INSURANCE, et al 1:16CV20**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS II AND III [DKT. NO. 14]**

pled a factual predicate for Counts II and III, and dismissal under Fed. R. Civ. P. 8 is inappropriate.

## III. CONCLUSION

For the reasons discussed, the Court **GRANTS** the defendants' motion (dkt. no. 14) and **DISMISSES WITH PREJUDICE** Counts II and III of the complaint.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: May 5, 2016

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE

15

